**Ricky WYATT, By and Through his Aunt and Legal Guardian Mrs. W.C. RAWLINS, Jr., et al., Plaintiffs,**

**Diane Martin, et al., Plaintiff–Intervenors,**

v.

**Virginia ROGERS, as Commissioner of Mental Health and Mental Retardation, and the State of Alabama Mental Health Officer, et al., Defendants,**

**United States of America, Amicus Curiae.**

**Civil Action No. 3195–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 8, 1996.

Fern Singer, Watterson & Singer, Birmingham, AL, James A. Tucker, ACLU of Alabama, Montgomery, AL, Ira A. Burnim, Andrew Bridge, Shelley Jackson, Claudia Schlosberg, Bazelon Center for Mental Health Law, Washington, DC, Michael S. Scheier, Birmingham, AL, James M. Lichtman, Ropes & Gray, Washington, DC, Kathryn H. Sumrall, Jackson, Garrison & Sumrall, P.C., Birmingham, AL, for plaintiffs Ricky Wyatt, Glenda Brander, David S. Schoel, Dr. Peyman, Joseph L. Moudry, Brenda N. Stacey, William Holden, Jr., Amelia B. Heath.

David Ferleger, Philadelphia, PA, Drew P. Baker, Reuben Wright Cook, Victoria Ann Farr, AL Disabilities Advocacy Program, Tuscaloosa, AL, for intervenors-plaintiffs Diane Martin, Mary Beth Parker, William Smith, Adelia Keebler, Michael Guins, Richard Mills, Kim Smelley, Frankie Hopkins, Kenneth Cook, Wayne Williams.

Mary Elizabeth Culberson, Office of the Attorney General, Montgomery, AL, Gregory Dale Crosslin, Robert E. Sasser, Clifton E. Slaten, Sasser & Littleton, P.C., Montgomery, AL, G.R. (Rick) Trawick, Department of Mental Health & Mental Retardation, Montgomery, AL, Paul Smith, Genner & Block, Washington, DC, for defendants Richard E. Hanan, Henry Steagall, Tom Brassell, Annie Laurie Gunter, Ken Wallis.

Kenneth E. Vines, U.S. Attorney's Office, Montgomery, AL, Deval L. Patrick, Robinsue Frohboese, Judith C. Preston, Tawana E. Davis, United States Department of Justice, Civil Rights Division, Special Litigation Section, Washington, DC, for amicus curiae U.S.

## ORDER

MYRON H. THOMPSON, Chief Judge.

On August 8, 1996, in an order dismissing an appeal of a preliminary injunction from this court as moot, the Eleventh Circuit Court of Appeals instructed that, "In seeking to enforce the court's injunctions in this case, the plaintiffs have not resorted to the traditional means of enforcing injunctions." *Wyatt v. Rogers,* 92 F.3d 1074, 1078 n. 8 (11th Cir.1996). The issue now before the court is how to proceed as to the following two motions now under submission in light of this instruction: the plaintiffs' motion, filed on January 22, 1993, for enforcement of a 1986 consent decree, claiming that defendants had failed to comply with the 1986 consent decree and were violating the then recently enacted Americans with Disabilities Act of 1990, 42 U.S.C.A. §§ 12101–12213 (West Supp.1995); and the Martin-intervenors' complaint-in-intervention, filed on January 25, 1991, asserting, among other things, that the care and conditions at one of the state's facilities, the Thomasville Adult Adjustment Center, violated prior court orders as well as federal statutory and constitutional law.

## I.

The relevant background is as follows:

● On April 13, 1972, this court found that conditions in the facilities operated by Alabama's Department of Mental Health and Mental Retardation violated patients' constitutional rights, and the court entered injunctions requiring the defendant state officials to bring the facilities into compliance with certain minimal constitutional standards. *Wyatt v. Stickney,* 344 F.Supp. 373 (M.D.Ala. 1972) (Johnson, J.) (setting standards for the mentally ill), *aff'd in relevant part,* 503 F.2d 1305 (5th Cir.1974); *Wyatt v. Stickney,* 344 F.Supp. 387 (M.D.Ala.1972) (Johnson, J.) (setting standards for the mentally retarded), *aff'd in relevant part,* 503 F.2d 1305 (5th Cir.1974).

● In 1986, the parties in *Wyatt* submitted to the court a proposed consent decree intended to resolve all outstanding disputes. After conducting a hearing on the objections to the decree, the court agreed to approve the parties' proposal and entered an order and memorandum opinion to that effect. *Wyatt v. Wallis,* No. 3195–N, 1986 WL 69194 (M.D.Ala. Sept. 22, 1986).

● On January 18, 1991, the defendants moved the court for a finding that they had

met their obligations under the 1986 consent decree and for an order terminating this litigation.

● Also in January 1991, Diane Martin and eleven other patients, now commonly referred to as the "Martin-intervenors," filed a complaint-in-intervention asserting, among other things, that the care and conditions at Thomasville violated prior orders as well as federal statutory and constitutional law.

● In the fall of 1991, the court held a trial on the Martin-intervenors' challenge to the care and conditions at Thomasville, followed by briefing in January and February 1992.

● On January 22, 1993, the plaintiffs brought a motion to enforce the 1986 consent decree, claiming that defendants had failed to comply with the 1986 consent decree and were violating the Americans with Disabilities Act.

● Trial on the following two substantive motions began in the spring of 1995: the defendants' January 18, 1991, motion for a finding that they had met their obligations under the 1986 consent decree and for an order terminating this litigation, and the plaintiffs' January 22, 1993, motion to enforce the 1986 consent decree. The trial lasted 35 days, spanning the months of March, April, and May.

● On July 11, 1995, in response to the plaintiffs' motion for preliminary relief, the court entered a memorandum opinion finding that resident children at the Eufaula Adolescent Center were not safe due to pervasive and severe safety and abuse problems. The court issued a preliminary injunction requiring that the defendants "take immediate and affirmative steps to provide for the safety and protection from abuse of all resident children at the ... Center, as required by *Wyatt* mental-illness standards, 1, 7, and 19." *Wyatt v. Poundstone*, 892 F.Supp. 1410, 1423 (M.D.Ala.1995).[1] The defendants appealed.

● On August 8, 1996, the Eleventh Circuit issued an order dismissing the appeal as moot, but also setting forth in some detail the procedures for obtaining compliance with an injunction. *Wyatt v. Rogers*, 92 F.3d 1074 (11th Cir.1996).

## II.

In its opinion of August 8, the Eleventh Circuit stated that "Precedent dictates that a plaintiff seeking to obtain the defendant's compliance with the provisions of an injunctive order move the court to issue an order requiring the defendant to show cause why he should not be held in contempt and sanctioned for his non-compliance." 92 F.3d at 1078 n. 8. The appellate court concluded that, with their motion for enforcement filed in January 1993 and complaint-in-intervention for enforcement in 1991, the plaintiffs and the Martin-intervenors "have not resorted to the traditional means of enforcing injunctions." *Id.*

The plaintiffs and the Martin-intervenors argue that this court need not heed these instructions from the appellate court because the issue addressed by the court was not formally before it. This district court cannot agree. First, the Eleventh Circuit relied upon *Newman v. State of Alabama*, 683 F.2d 1312, 1318 (11th Cir.1982), *cert. denied*, 460 U.S. 1083, 103 S.Ct. 1773, 76 L.Ed.2d 346 (1983), which has been on the books for years. This district court and the parties simply overlooked it. Second, it is clear that the appellate court was going out of its way to give careful direction to this court as to how to proceed upon dismissal of the appeal, and, what is more important, it was bringing to the court's attention apparent errors that could still be corrected. It would be foolish, therefore, and possibly even contemptuous to proceed down a path that the appellate court has expressly, not just impliedly, stated is incorrect. Indeed, the Eleventh Circuit pointedly and repeatedly observed that the plaintiffs' January 1993 motion and the procedures employed by the court to consider

---

1. Doc. nos. 1119–20. The notation "Doc. no." indicates the file docket number given to a document. It is penciled in the right-hand bottom corner of a pleading or order and is entered on the docket sheet. Because of the large number of documents (pleadings and orders) generated

almost daily in this case, the court has attempted to identify a document by both its filing or entry date and its docket number. The clerk of the court did not begin giving documents a docket number until November 22, 1993.

the motion were defective. *See Wyatt,* 92 F.3d at 1078 n. 8 ("In seeking to enforce the court's injunctions in this case, the plaintiffs have not resorted to the traditional means of enforcing injunctions described above. Nor has the court issued orders to show cause, calling upon the allegedly recalcitrant defendants to explain why they have not complied with the injunctive provisions in question."); *id.* at 1078 n. 12 ("on this occasion plaintiffs' motion alleged that the defendants were violating the 1986 consent decree and sought a contempt adjudication and sanctions. . . . [H]owever, the motion failed to allege, with specificity sufficient to inform the defendants, which injunctive provisions the defendants were purportedly violating."); *id.* at 1078 n. 13 ("With respect to the plaintiffs' motion that the defendants be held in contempt for violating the 1986 consent decree, the court did not determine whether the motion was sufficient to warrant the issuance of an order to show cause, . . .; rather, the court simply scheduled an evidentiary hearing.").

The plaintiffs and the Martin-intervenors contend that this court can still ignore these appellate instructions because the defect, if any, was harmless and the defendants' objection to how this court has so far conducted proceedings comes too late. Again, the court cannot agree. The appellate court observed that, under the contempt procedures it outlined, "if the plaintiff establishes the defendant's noncompliance with the court's injunctive order and the defendant presents no lawful excuse for his noncompliance, the court usually adjudges the defendant in civil contempt and imposes a sanction that is likely to prompt the defendant's compliance with the injunction." 92 F.3d at 1078 n. 8. The court then proceeded to outline the available sanctions. The court stated that "One sanction might be to incarcerate . . . the defendant," and "[a]nother sanction might be to fine the recalcitrant official." *Id.*

However, before either of these sanctions may be imposed against defendants here, this court would have to follow certain procedures—procedures that arguably are rooted in constitutional protections. *See International Union, UMWA v. Bagwell,* 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). These procedures, as outlined by the Eleventh Circuit, are as follows: "Precedent dictates that a plaintiff seeking to obtain the defendant's compliance with the provisions of an injunctive order move the court to issue an order requiring the defendant to show cause why he should not be held in contempt and sanctioned for his noncompliance. . . . In his motion, the plaintiff cites the provision(s) of the injunction he wishes to be enforced, alleges that the defendant has not complied with such provision(s), and asks the court, on the basis of his representation, to order the defendant to show cause why he should not be adjudged in contempt and sanctioned. If the court is satisfied that the plaintiff has made out a case for an order to show cause, it issues the order to show cause. The defendant, following receipt of the order, usually files a response, either confessing his noncompliance or presenting an excuse, or 'cause,' therefor. The dispute is thereafter resolved at a show cause hearing, with the issues to be decided at the hearing framed by the show cause order and the defendant's response." *Wyatt,* 92 F.3d at 1078 n. 8.

These procedures have not been followed here. The Eleventh Circuit equated the hearings held before this district court—on the motion filed by the plaintiffs in 1993 and the complaint-in-intervention filed by the Martin-intervenors in 1991—to nothing more than "status conferences." The court wrote, "the hearings that the district court has convened to consider the plaintiffs' motions for enforcement have amounted for the most part to status conferences in which the court is briefed, sometimes through testimony, on the current conditions at DMH/MR institutions." *Id.* The court even proffered that "This may account for the court's failure to rule on the plaintiffs' 1981 motion to ensure compliance with the court's 1972 injunctive orders and, as well, the plaintiffs' 1993 motion, . . . to enforce the consent decree entered in 1986." *Id.* These so-called "status conferences" cannot be viewed as meeting the requirements for contempt proceedings.

The court will therefore deny the plaintiffs' January 1993 motion to the extent they seek enforcement of the 1986 consent decree. The motion will still be considered to the

extent the plaintiffs claim that the defendants are violating the Americans with Disabilities Act. The denial will be without prejudice though. If the court should find that the defendants are not entitled to a finding of compliance and to termination of this litigation, the plaintiffs may, if they wish, then pursue contempt proceedings, but as outlined by the Eleventh Circuit.

Similarly, the denial of the Martin-intervenors' complaint-in-intervention will be to the extent they seek enforcement of prior orders, and not to the extent they claim that the defendants have otherwise violated federal law. And the denial will be without prejudice, and thus with the result that, if the court should find, based on evidence presented in 1991 as well as in 1995, that the defendants are not entitled to a finding of compliance and to termination of this litigation as to Thomasville, the Martin-intervenors may, if they wish, then pursue contempt proceedings, but again as outlined by the Eleventh Circuit.

For above reasons, it is ORDERED as follows:

(1) The plaintiffs' motion, filed on January 22, 1993, for enforcement of a 1986 consent decree, claiming that the defendants had failed to comply with the 1986 consent decree and were violating the recently enacted Americans with Disabilities Act of 1990, 42 U.S.C.A. §§ 12101–12213 (West Supp.1995), is denied without prejudice to the extent that the plaintiffs seek enforcement of prior court orders.

(2) The Martin-intervenors' complaint-in-intervention, filed on January 25, 1991, asserting, among other things, that the care and conditions at one of the state's facilities, the Thomasville Adult Adjustment Center, violated prior court orders as well as federal statutory and constitutional law, is denied without prejudice to the extent that the Martin-intervenors seek enforcement of prior court orders.

It is further ORDERED that the defendants' motion to dismiss filed on August 14, 1996 (Doc. no. 1424), is denied.